ST. LOUIS TYPE FOUNDRY, Respondent, *v.* UNION PRINTING AND PUBLISHING COMPANY, Appellant.

December 4, 1876.

1. A contract to pay upon delivery, if demanded, is not a contract to pay upon delivery; and, where no demand was made at the time of delivery, an attachment will not lie upon a failure to pay upon a subsequent demand, as in the case of a failure to pay where the contract is to pay upon delivery.

2. Where any credit is given, attachment will not lie. A failure to pay at the expiration of an uncertain term of credit, conditioned upon demand, does not constitute, or raise a legal presumption of, fraud.

3. The same evidence cannot be relied on to establish two wholly inconsistent grounds of attachment.

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*

*Martin & Lackland,* for appellant, cited : Harlow *v.* Sass, 38 Mo. 34 ; Drake on Attach. 615, 620, 622, 624, 625, 628, 637, 639, 647, 648, 650, 656 ; Merchants' Bank

of Cleveland *v.* O. & S. Ins. Co., 1 Disney, 469 ; 2 Pars. on Con. 767 ; Sturdevant *v.* Tuttle, 22 Ohio, 111.

*Noble & Orrick*, for respondent.

GANTT, P. J., delivered the opinion of the court.

This was a suit commenced by attachment, on an affidavit setting forth two causes, viz. : first, that the defendant has failed to pay the price and value of the articles and things delivered, which, by contract, he was bound to pay upon delivery ; second, that the debt sued for was fraudulently contracted on the part of the defendant.

On the issue made by the traverse of the statements of the affidavit there was a verdict for plaintiff, and thereupon, there being no denial of the debt, there was judgment for the amount claimed.    At the trial there was evidence tending to show that the articles sold were delivered during a period of time beginning in the latter part of 1871 and ending on April 17, 1872.    The articles were all entered in a pass-book, and the custom was to present, at the beginning of each month, the account for all the articles got during the preceding month.    It was expected that they would then be paid for.    This was what was called a cash transaction.    The price of the articles sold during December, 1871, was not demanded on January 1, 1872.    Had it been demanded, there was then money enough on hand to pay it.    A demand was made during January, and $350 was paid on or about the 19th.    It had been demanded some time before, but the money was not on hand.    Notwithstanding the failure to pay promptly, the plaintiff went on furnishing other articles of the same kind on the credit of the company, which was considered solvent.    Assurances were given by the manager that all the debts contracted would be paid.    Articles were got from time to time, down to April 17, 1872, and payments made or credits allowed. When the $350 was paid in January, plaintiff was told that the balance would be forthcoming in due time.    There were some items for work and labor done, as well as for materials

furnished, in the account. The manager of defendant told its purchasing agent to buy for cash; that it would be a cash transaction whenever demanded. Formal demand was made on February 9 or 10, 1872. It was two months after delivery before demand was made. The bill of items began December 8, 1871, and ended April 17, 1872, as far as items to the debit of defendant were concerned. There were numerous, almost daily, items in each of the months — December, January, February, March, and April — between these extreme dates. A witness for defendant stated that the bill was not presented for three or four months after the delivery of the articles. The person who called with the bill was told he would he paid as soon as defendant could possibly get the money. The reply was that it had been standing long enough already. In December, 1871, the assets of the defendant were $40,000 and its liabilities $30,000. The assets were sold under a deed of trust, and realized $15,000. This was some time subsequent to April 17, 1872.

The court gave the following instructions at the request of plaintiff, defendant excepting:

" 1. If the jury believe from the evidence that the property sued for was sold and delivered to the defendant under an agreement or contract that the same was to be paid for on delivery, then the jury will be authorized to find for the plaintiff on that issue as made by the first plea in abatement.

" 2. If the jury believe from the evidence that the defendant was to pay for the articles and things delivered, as stated in the petition, upon delivery, or that the debt sued for was fraudulently contracted on the part of the defendant debtor, then the jury will find for the plaintiff.

" 3. If the jury believe from the evidence that at the time of the commencement of the dealings, as to the sale and delivery of the goods and things in question, it was expressly agreed by and between them that the sale was to be for

cash, and payment, if demanded, on delivery, then the averment that the defendant was bound by contract to pay upon delivery will be sustained, and the jury will so find."

Defendant asked the following instructions, which the court gave :

" 1. On the first ground of attachment set forth in the affidavit the plaintiff is not entitled to recover, unless the jury believe from the evidence (1) that all the items in the account on file are for goods sold and delivered to defendant; (2) that the defendant agreed with the plaintiff to pay for such items upon delivery of such goods to defendant. If a single item of the plaintiff's demand is not for the sale of goods, the jury should find for defendant on the first ground of attachment.

" 2. Before the jury can find for the plaintiff on the second ground of attachment, they must be satisfied from the testimony (1) that the defendant made a false representation to the plaintiff in respect to the purchase of the goods mentioned in the petition ; (2) that defendant knew at the time that the representation was false ; (3) that said representation was material in inducing the contract ; (4) that the plaintiff, trusting in said representation and confiding in the same, was by means thereof induced to contract the debt mentioned in the petition. A representation that a party will pay in the future is not a false representation, not being the representation of any fact."

The jury found for plaintiff on both issues, and defendant filed a motion for a new trial :

" 1. Because the court admitted illegal evidence.

" 2. Because the court excluded legal evidence.

" 3. Because the court gave erroneous instructions asked for by plaintiff.

" 4. That the issues and the verdict were contradictory.

" 5. That plaintiff was permitted to introduce evidence on the second issue, relative to credit given to defendant, which

was contradictory of the sworn allegations of the first issue, and contradictory of the evidence given in its support.

"6. There was positive proof given by plaintiff on his first issue that the demand was not [solely?] for the sale of goods.

"7. There was no evidence on the second issue that defendant was guilty of a fraud, or that the debt was fraudulently contracted."

The court overruled this motion, and, its judgment being affirmed at general term, the case comes here by appeal.

1. The third instruction given by the court seems erroneous. It tells the jury that, "if the sale was to be for cash, and payment, *if demanded*, on delivery," then the contract was to pay on delivery. The words of the statute are that an attachment will lie "when the debtor has failed to pay the price of any article or thing delivered which by contract he was bound to pay *upon* delivery." It is obvious that the intention of the statute was to denounce as fraud, for which an attachment might issue, the getting of possession, by the vendee, of the goods of the vendor upon promise of payment upon delivery. The idea of giving credit is absolutely excluded; and though there may be difficulty in maintaining that the meaning of the act is that the vendor must deliver the thing sold, with one hand, and *contemporaneously* receive the price in the other, allowing no possible interval of time, it is quite clear that, if the understanding was that payment was to be made, "*if demanded, on delivery*," a condition is introduced which broadly distinguishes the case from what the statute describes.

It seems to be established that a custom prevails in St. Louis of furnishing goods to be paid for on the first of the ensuing month, when a bill is rendered or demand made; and the witnesses of the plaintiff characterize such a transaction as *a sale for cash*. The sale in the present instance appears to have been of this nature, and the promise of the

vendee and the expectation of the vendor were that the price should be paid when the bill was rendered at the end of the month. By whatever laxity of expression such a transaction is called a cash sale, it is inadmissible to transfer to it incidents provided by the General Assembly for a totally different course of dealing. When the parties contemplate the continuous delivery of goods with periodical payments, *some* credit is given, however frequent or short may be the intervals at which payment is promised. It is not for courts, whose office it is to administer the law, to pronounce a case of this nature so nearly akin to that of a sale on delivery as to be within the equity of the statute. We are warned by impressive teaching not to confound resemblance with identity, nor to substitute our own suggestions of what the law-givers may be imagined to have had in their thoughts for what they have taken pains to declare in language whose precision leaves no room for interpretation.

2. It is maintained, however, that, the jury having found *both* issues made on the affidavit in favor of the plaintiff, the verdict may well stand on the second, although the error of the finding on the first is plain.

But we think it will be difficult to doubt that the jury were, by the instructions of the court, invited to reason in a circle. They were told to find for the plaintiff if the contract was to pay for the goods on delivery; that the contract was to pay on delivery if the goods were to be paid for when the price was demanded after delivery; and that such promise, coupled with a failure to perform, constituted fraud. We see nothing in the evidence indicating fraud on the part of the defendant, unless it be the assurances given of ability to pay for the goods as bargained for. But, if the statute makes a failure to perform a specified contract ground for the issue of an attachment, and adds as another ground for attachment the fraudulent contracting of the debt sued for, we can hardly imagine the inten-

tion of the Legislature to have been that a failure to pay at the expiration of a short or uncertain term of credit constituted the contemplated fraud. This would too nearly resemble the statement of several connected propositions conducing to one result as the ground of an attachment, and then stating as another ground of attachment a weaker and less conclusive combination of some of these propositions. It will scarcely aid the argument for the plaintiff if we say that this last combination of fewer conditions may be evidence from which the jury may infer fraud, although the law does not pronounce the presumption of fraud resulting from their establishment to be irresistible or conclusive. In the case before us this distinction was not drawn by the instructions of the court: the jury, by their erroneous finding on the first issue, plainly showed the degree to which they were misled; and their finding of the second issue is at least presumably due to the same causes which led them to err respecting the first.

3. There is another point which is pressed with force and effect. The same evidence is directed to the establishment of both the issues; and yet these issues, as explained by the evidence, are inconsistent. When all the evidence was put in, the case for the plaintiff stood thus, viz.: No credit was given, and the bargain was to pay on delivery of the goods sold — the failure to do which authorizes the vendor to sue by attachment; and, again, credit was fraudulently obtained, by the false claim of a solvent condition.

It would not be easy for any one to separate the testimony in this case into two parts, and say, "*This* is offered in support of the first issue, and *that* in aid of the second." These two inconsistent results of the evidence furnish a comment on the necessity of distinctness and precision in framing the grounds on which an attachment is asked for, and in supporting each ground by evidence applicable to it alone. Here, the establishment of one of the causes alleged for the issuing of the attachment almost necessarily over-

threw the other. We pass, however, from this considera-
tion, because, as we think, the proceedings involve an error
more fundamental.

4. A sale for cash, or a sale which is called a cash trans-
action, the term being interpreted in the sense in which the
merchants of St. Louis use it, is something different from a
sale of goods to be paid for on delivery  Of course, a sale
of goods to be paid for on delivery may in one sense be
termed a sale for cash; but the interpretation put on the
phrase " a cash transaction," or " a cash sale," by the
course of dealings in St. Louis, demonstrates that often
what is thus characterized repudiates the idea of payment
at the time when the goods come to the possession of the
purchaser. It is distinctly shown that it is quite consistent
with the definition practically given to this phrase by the
well-understood custom of the merchants of St. Louis that
an interval of thirty days may elapse between delivery and
payment, and yet that the transaction may be called and
recognized by every one as a " cash transaction."

It follows that a " sale for cash," a " cash sale," or a
" cash transaction " is something, as known to the mer-
chants of St. Louis, not to be confounded for a moment
with a sale by the terms of which the goods sold are to be
paid for on delivery. The two expressions are not converti-
ble; and every instruction which in terms treats them as
convertible, or which assumes their convertibility, is liable
to mislead a jury — indeed, can hardly fail to have that
effect.

Now there was no evidence before the jury that the goods
in this case were to be paid for on delivery. There was
evidence that the sale was for cash, or that the transaction
was what is called a " cash transaction." And what this
phrase meant we have already seen.

But upon this evidence the court instructed the jury that,
(1) if the contract was that the goods were to be paid for
on delivery, they were at liberty to find for the plaintiff on

the first issue ; (2) that, if it appeared that the contract was to pay for the goods on delivery, or that the debt sued for was fraudulently contracted, they might find for the plaintiff ; (3) that, if the sale was for cash, and payment, if demanded, on delivery, then there was a contract for payment on delivery.

Instructions are especially misleading and mischievous when they suggest to a jury that they are at liberty to indulge an hypothesis for which the evidence gives no warrant ; and the hurtful nature of these declarations of law need not be dwelt upon. The error is gross and palpable. But it is urged that, forasmuch as the jury has found that the debt was fraudulently contracted, the judgment must stand, although it be conceded that their verdict on the other issue is erroneous.

We think otherwise. The jury is substantially told that they are at liberty to find for plaintiff because the defendant promised to pay on delivery and did not, and also at liberty to find for plaintiff if the debt was fraudulently contracted by the defendant. This last instruction is given in a case where the only evidence of fraud on the part of the defendant is that he did not keep his promise ; and the failure to keep his promise is commented on by the court in another instruction, which we have seen to be erroneous. A plainer example of reasoning in a circle does not often occur. A jury which would fail to be confused by such declarations of the law must be more than ordinarily clear-headed and discerning.

That the jury in this case was not one of the character last supposed is apparent from the finding in reference to other instructions. At the request of defendant, the court instructed the jury that, "if a single item of the plaintiff's demand is not for the sale of goods, the jury should find for the defendant on the first ground of attachment." Now, not to dwell on other particulars, there was one article of charge on December 23, 1871, of $25.20 for "repairing a

newspaper press." This was part of the evidence of plaint-
iff. It is not perceived how the jury could have failed to
see that this fact compelled them to find the first issue for
the defendant under the instruction of the court. Respect-
ing the correctness of that instruction we say nothing. But,
so far as the jury were concerned, it was the law, and they
appear to have plainly disregarded it. It is not to be pre-
sumed that they did this contumaciously or perversely.
Their action is capable of a more indulgent construction.
But that they found against the direction of the court can
hardly be denied.

We reverse the judgment and remand the cause, all the
judges concurring.